UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - -:
SHAWN PETTAWAY,                          :
                                         :
        Petitioner,                      : 09 Civ. 3587 (LTS) (JCF)
                                         :
        -against-                        :    REPORT AND
                                         :    RECOMMENDATION
                                         :
WILLIAM D. BROWN, Superintendent,        :
                                         :
        Respondent.                      :
- - - - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE LAURA T. SWAIN, U.S.D.J.:

        Shawn Pettaway, proceeding pro se, brings this petition for a
writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his
conviction in New York State Supreme Court, Bronx County, for six
counts of Criminal Possession of a Weapon in the Third Degree,
seven counts of Criminal Possession of a Weapon in the Fourth
Degree, and 19 counts of Criminal Sale of a Firearm in the Third
Degree.  Mr. Pettaway argues that:  (1) the evidence presented at
trial was legally insufficient to convict him on one count of
Criminal Sale of a Firearm in the Third Degree; (2) the trial judge
failed to instruct the jury to consider evidence relevant to each
charge separately and to render an independent verdict on each
count; (3) the admission of uncharged crimes evidence violated his
rights to due process and a fair trial; (4) the failure of his
counsel to object to the jury instructions and to allow him to
testify violated his right to effective assistance of counsel; (5)
the trial court's failure to make an inquiry into his request for

1

new counsel violated his right to the counsel of his choice; and
(6) the sentence violated his right against cruel and unusual
punishment.[1]

For the reasons set forth below, I recommend that the petition
be denied.

Background

    A.  The Incidents

On April 1, 2001, the petitioner sold three firearms to an
undercover officer, known as "UC 437."  He informed the officer
that he was planning to travel to New York and agreed to supply the
officer with guns.  (Tr. at 74, 77).  On April 8, 2001, the
petitioner and co-defendant Phenroy Day sold five firearms to UC
437.  (Tr. at 81-82).  Either the petitioner or Mr. Day then sold
gus to UC 437 on 19 additional dates, exchanging a total of 104
firearms for cash.

The details of the transactions on April 14, 2001 and April
17, 2001 are pertinent to this petition.  While selling five
firearms to UC 437 on April 14, Mr. Pettaway used his cell phone to
call Mr. Day and then handed the phone to UC 437.  (Tr. at 121-22,
131-33).  Mr. Day informed UC 437 that he was coming to New York

---

[1] In order to give the petitioner the benefit of any doubt, I
am construing his petition to incorporate the arguments contained
in his brief on direct appeal to the Appellate Division, First
Department.  (Brief for Defendant-Appellant ("Pet. App. Brief"),
attached as Exh. 1 to Declaration of Kayonia L. Whetstone dated
Nov. 2, 2009 ("Whetstone Decl.").

that evening and that he had guns to sell.  (Tr. at 122, 133).
However, Mr. Day did not appear that night.  (Tr. at 136).  On
April 17, Mr. Day called UC 437 to say that he would be in town
that day with firearms to sell.  (Tr. at 139).  Mr. Day and UC 437
met later that day, and UC 437 purchased two firearms.  (Tr. 138-
40).

On August 28, 2001, the police arrested the petitioner and Mr.
Day and charged them with acting in concert with each other and
with others to possess and sell firearms illegally. (Pet. App.
Brief at 2).  Mr. Pettaway was indicted on September 20, 2001.
(Respondent's Brief, attached as Exh. 2 to Whetson Decl., at 4).

B.  The Trial

Mr. Pettaway and Mr. Day were tried jointly.  During jury
selection, the prosecution submitted a written application seeking
to admit the testimony of several Virginia residents alleged to
have purchased firearms for the defendants.  (J. at 289).[2]  The
petitioner opposed the application on the ground that evidence of
procurement of the firearms was irrelevant to charges of possession
and sale and instead went to propensity.  (J. at 289-91).  The
court granted the prosecution's application and asked defense
counsel to propose limiting instructions regarding the testimony.
(J. at 296).

---

[2]  "J." refers to the transcript of the jury selection
proceedings.

At trial, UC 437 testified about his transactions with the petitioner and with Mr. Day.  (Tr. at 72-670).[3]  The prosecution introduced audio and videotapes of several of the transactions, as well as the firearms themselves, to corroborate the officer's testimony.  In addition, 13 witnesses testified that they had purchased firearms for Mr. Pettaway and Mr. Day in Virginia.  (Tr. at 854-96, 931-51, 952-88, 997-1027, 1034-63, 1065-1113, 1116-45, 1146-63, 1163-84, 1187-1205, 1206-20, 1220-53, 1267-91).  Several of the witnesses testified that they were compensated with drugs and were told by the petitioner and Mr. Day to report the guns as stolen.  (Tr. at 960-61, 999, 1004, 1045, 1053-56, 1148, 1167, 1212, 1279-80).  Mr. Pettaway did not testify.  Mr. Day did and admitted that he and the petitioner sold firearms to the undercover officer.  (Tr. at 1331).

At the conclusion of the trial, the judge instructed the jury on the law as it relates to acting in concert and gave an overview of the charges.  (Tr. at 1677-80).  The court then defined the elements of each charge and explained which charges corresponded to each of the dates.  (Tr. 1680-1703).  The court charged the jurors to consider the evidence against each defendant separately.  (Tr. at 1667-68).  However, the judge did not specifically tell the jury to consider the evidence pertaining to each crime separately.

---

[3] "Tr." refers to the trial transcript.

C.  Conviction and Sentencing

On May 28, 2003, the jury convicted Mr. Pettaway on all 32 counts.  (Tr. at 1730-35, 1740-43).  At a predicate felony hearing prior to sentencing, the petitioner requested a new attorney and stated several reasons for his dissatisfaction with his trial counsel.  (P. at 3-5).[4]  He informed the trial judge that counsel "never spoke up for me" during the trial, "talked me out of taking the stand," "wasn't doing anything," and only asked six questions out of "10 reams of questions" that the petitioner provided to him.  (P. at 3-5).  The judge denied the request for new counsel.  (P. at 4-5).

On July 24, 2003, Mr. Pettaway was sentenced to seven years in prison and five years of post-release supervision for each of the six counts of Criminal Possession of a Weapon in the Third Degree; three and one-half to seven years for each of the 19 counts of Criminal Sale of a Weapon in the Third Degree; and one year for each of the seven counts of Criminal Possession of a Weapon in the Fourth Degree.  (S. at 51-57).[5]  The court ordered the sentences for the counts arising from the same sale, such as criminal possession and criminal sale on April 8, 2001 to run concurrently, while the sentences for the counts arising from different sales,

---

[4] "P." refers to the transcript of Mr. Pettaway's predicate felony hearing.

[5] "S." refers to the transcript of Mr. Pettaway's sentencing proceedings.

5

such as criminal sale on April 1, 2001, and criminal sale on May 5, 2001, would run consecutively.  (S. at 51-57).  Thus, Mr. Pettaway's total sentence ranges from a minimum of 87 and one-half years to a maximum of 133 years.  (S. at 57).  Pursuant to New York Penal Law ("Penal Law"), however, the petitioner is serving a twenty-year determinate sentence.  <u>See</u>  Penal Law § 70.30(1)(e)(ii)(A) (if aggregate maximum of multiple consecutive sentences exceeds 20 years, period of incarceration is limited to determinate sentence of 20 years).

    D.  <u>Appeal</u>

Mr. Pettaway filed an appeal to the Appellate Division, First Department on November 1, 2005.  He asserted essentially the same claims that he now raises in his habeas petition:  (1) that the conviction for sale of a firearm on April 17, 2001, was based on insufficient evidence; (2) that the trial court erred in failing to instruct the jurors to consider the evidence of each incident separately; (3) that the admission of evidence of uncharged crimes violated his rights to due process and a fair trial; (4) that the trial court erred in not conducting an inquiry into his dissatisfaction with his attorney; and (5) that his sentence should be reduced because of several mitigating factors.  (Pet. App. Brief at 12-39).

On June 15, 2006, the Appellate Division rejected the petitioner's contentions and affirmed his convictions.  <u>People v.</u>

6

Pettaway, 30 A.D.3d 257, 817 N.Y.S.2d 31 (1st Dep't 2006).  It held that his challenges to the sufficiency of the evidence and the jury instructions were unpreserved for appeal and, in any event, lacked merit.  Id. at 258, 817 N.Y.S.2d at 32.  The court found that the trial court properly exercised its discretion when it admitted uncharged crimes evidence and that any attempt by the petitioner to raise a constitutional claim regarding that evidence was unpreserved.  Id.  It further noted that the constitutional claim would be rejected even if it were reviewed and that [i]t is questionable whether uncharged crimes evidence presents a constitutional issue to begin with. . . ."  Id. (citing Estelle v. McGuire, 502 U.S. 62, 75 n.5 (1991)).  Next, the Appellate Division held that the trial court properly exercised its discretion in denying the petitioner's request for new counsel and that he received effective assistance of counsel.  Id.  Finally, the court found no basis for reducing Mr. Pettaway's sentence.  Id. at 258-59, 817 N.Y.S.2d at 32.

Mr. Pettaway then sought leave to appeal to the New York Court of Appeals, relying on arguments raised in his brief to the Appellate Division.  (Whetstone Decl., ¶ 9).  On August 24, 2006, leave was denied.  People v. Pettaway, 7 N.Y.3d 816, 822 N.Y.S.2d 491 (2006) (Table).

Discussion[6]

    A. Sufficiency of the Evidence

Mr. Pettaway argues that there was insufficient evidence presented at trial to convict him of one count of Criminal Sale of a Firearm. Specifically, he claims that the prosecution failed to present any evidence that he participated in any way in the sale of firearms to an undercover agent on April 17, 2001. (Pet. App. Brief at 12). The respondent contends that Mr. Pettaway's claim is unpreserved.

A procedural default generally bars a federal court from reviewing the merits of a habeas claim. Wainwright v. Sykes, 433

---

[6] Prior to passage of the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), factual findings made by a state court after an evidentiary hearing were presumed correct in a federal habeas proceeding, but federal courts were not required to defer to state court determinations of law and of mixed questions of law and fact. See Thompson v. Keohane, 516 U.S. 99, 107-12 (1995); Brown v. Artuz, 283 F.3d 492, 497 (2d Cir. 2002). Under the AEDPA, however, a writ of habeas corpus may not issue "with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

The AEDPA standard applies to this case since Mr. Pettaway filed his petition after the Act's effective date. See Brown, 283 F.3d at 498 n.2. However, where, as here, the petitioner's claims fail under the less deferential pre-AEDPA standard, there is no need to conduct the AEDPA's more intricate analysis. Cf. Kruelski v. Connecticut Superior Court for the Judicial District of Danbury, 316 F.3d 103, 106 (2d Cir. 2003) (suggesting, in post-AEDPA cases, that habeas courts should assess first whether state court's ruling was erroneous under the "correct interpretation" of federal law at issue, then whether the ruling was unreasonable).

U.S. 72, 86-87 (1977).  This rule is grounded in the principle that federal habeas review is prohibited if a state court rests its judgment on a state law ground that is "'independent of the federal question and adequate to support the judgment.'"  Cotto v. Hebert, 331 F.3d 217, 238 (2d Cir. 2003) (quoting Coleman v. Thompson, 501 U.S. 722, 729 (1991)).  A state procedural bar qualifies as an "independent and adequate" state law ground if "'the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar.'"  Levine v. Commissioner of Correctional Services, 44 F.3d 121, 126 (2d Cir. 1995) (quoting Harris v. Reed, 489 U.S. 255, 263 (1989)).  Furthermore, a state procedural rule will generally be adequate to preclude habeas review if it is "'firmly established and regularly followed.'"  Lee v. Kemna, 534 U.S. 362, 376 (2002) (quoting James v. Kentucky, 466 U.S. 341, 348 (1984)).

New York's preservation doctrine, as embodied in New York Criminal Procedure Law § 470.05(2), requires that an objection be both timely and specific to the alleged error in order to be preserved for appellate review.  See People v. Gray, 86 N.Y.2d 10, 18-19, 629 N.Y.S.2d 173, 174-75 (1995).  This rule is "firmly established and regularly followed," such that it qualifies as an independent and adequate state law ground precluding federal habeas review.  Garvey v. Duncan, 485 F.3d 709, 720 (2d Cir. 2007); see also Garcia v. Lewis, 188 F.3d 71, 78-79 (2d Cir. 1999).  The

petitioner conceded that he failed to preserve his insufficient evidence claim (Pet. App. Brief at 12 n.9), and the Appellate Division ruled that this claim was unpreserved for appellate review. Pettaway, 30 A.D.3d at 258, 817 N.Y.S.2d at 32.

A habeas petitioner can overcome a procedural bar if he is able to show cause for the default and resulting prejudice. See Carmona v. United States Bureau of Prisons, 243 F.3d 629, 633 (2d Cir. 2001). However, Mr. Pettaway has proffered no cause for failing to preserve a challenge to the sufficiency of the evidence.

Alternatively, a defaulted claim may be heard if the petitioner can show that "failure to consider [it] . . . will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. The Supreme Court has limited this exception to the "extraordinary" case where a "'constitutional violation has probably resulted in the conviction of one who is actually innocent.'" Schlup v. Delo, 513 U.S. 298, 327 (1995) (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).

A review of the evidence presented at trial does not support the argument that failure to consider the claim will result in a fundamental miscarriage of justice, as Mr. Pettaway has made no showing that he is actually innocent. In New York, in order for a defendant to be held criminally liable for the conduct of another, the prosecution must demonstrate that the defendant acted with the mental culpability required for commission of the crime and

10

"solicit[ed], request[ed], importun[ed], or intentionally aid[ed]" another person in committing the crime.  Penal Law § 20.00.  A defendant acts in concert with another if he exhibits any behavior that intentionally affects or furthers the illegal act.  See People v. Bello, 92 N.Y.2d 523, 526, 683 N.Y.S.2d 168, 170 (1988).

Although Mr. Pettaway was not physically present at the sale of firearms on April 17, 2001, his actions on April 14 intentionally furthered the unlawful conduct on that date.  While selling firearms to UC 437 on April 14, the petitioner called Mr. Day and handed the phone to UC 437.  (Tr. at 121-22, 131-33).  During the subsequent conversation, UC 437 arranged with Mr. Day to purchase guns in the near future.  (Tr. at 133).  As a result of this phone call, Mr. Day sold gun to UC 437 on April 17.  (Tr. at 137).  Viewing the evidence in the light most favorable to the prosecution as required when reviewing a challenge to the sufficiency of the evidence, see United States v. Dugan, No. 09-1111, 2010 WL 1628790, at *1 (2d Cir. April 22, 2010), the petitioner's phone call to Mr. Day intentionally furthered the criminal sale of a firearm on April 17, 2001.  Thus, there is no injustice in finding this claim procedurally barred, as it would ultimately fail on the merits.

B. Jury Instructions

Next, Mr. Pettaway contends that the trial court's jury charge was improper.  He argues that the judge failed to instruct jurors to consider evidence of each incident separately and render an

independent verdict on each count.  (Pet. App. Brief at 16).  The Appellate Division held that this claim, too, was unpreserved for appellate review.  Pettaway, 30 A.D.3d at 258, 817 N.Y.S.2d at 32.

As discussed above, a habeas petitioner can overcome a procedural bar if he is able to show just cause for the default and resulting prejudice.  See Carmona, 243 F.3d at 633.  Mr. Pettaway claims that his failure to preserve a challenge to the jury instructions was due to ineffective assistance of counsel (Pet. App. Brief at 21), which, indeed, may be a cause for excusing procedural default.  Murray, 477 U.S. at 488; see also Dretke v. Haley, 541 U.S. 386, 394 (2004); Grant v. Woods, 313 Fed. Appx. 376, 377 (2d Cir. 2009).  However, even if the petitioner could establish cause for the default, he cannot show that he was prejudiced.

In a trial on multiple counts, there is always a danger of some prejudice because "'juries are apt to regard with a more jaundiced eye a person charged with two crimes than a person charged with one.'"  United States v. Werner, 620 F.2d 922, 929 (2d Cir. 1980) (quoting United States v. Smith, 112 F.2d 83, 85 (2d Cir. 1940)).  Even if the evidence is lacking on one count, the evidence on the remaining counts may convince the jury of the defendant's guilt on all counts.  Herring v. Meachum, 11 F.3d 374, 377 (2d Cir. 1993).  Despite this danger of prejudice, the government has a valid interest in the convenience and efficiency of trying related charges in a single proceeding, and proper jury instructions limit the

12

prejudicial effect.  <u>Spencer v. Texas</u>, 385 U.S. 554, 562 (1967).
Jury instructions thus play an important role in insuring a fair
trial on multiple counts.

In challenging instructions to a jury, a petitioner must
demonstrate more than mere speculation as to the jury's confusion
and instead must show that the charge "'had substantial and
injurious effect or influence in determining the jury's verdict.'"
Hedgpeth v. Pulido, __ U.S. __, __, 129 Sup. Ct. 530, 531-32 (2008)
(quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).  If a
petitioner fails to demonstrate such an effect, any error is deemed
harmless.  See, e.g., Neder v. United States, 527 U.S. 1, 9-10
(1999) (omission of element of crime from jury instructions deemed
harmless).  When reviewing a jury instruction for substantial
prejudice, a federal court must consider the instruction in the
context of the trial as a whole to determine "whether the ailing
instruction by itself so infected the entire trial that the
resulting conviction violates due process."  <u>Estelle</u>, 502 U.S. at
72); <u>Smalls v. Batista</u>, 191 F.3d 272, 277 (2d Cir. 1999).  The
reviewing court's task is not to determine "whether the challenged
instructions, standing alone, are erroneous or misleading," <u>Beverly
v. Walker</u>, 118 F.3d 900, 902 (2d Cir. 1997), but rather "whether
there is a reasonable likelihood that the jury has applied the
challenged instruction in a way that violates the Constitution."
<u>Estelle</u>, 502 U.S. at 72 (internal quotation marks omitted).  Any

such risk is diminished where the evidence for each count is distinct and easily compartmentalized.  <u>Herring</u>, 11 F.3d at 378. The deliberations of the jury also shed light on whether the jury instructions effectively limited the danger of commingling of the evidence.  <u>See</u> <u>id.</u>

While the trial court in this case did not explicitly instruct the jury to consider the evidence as to each count separately, the instructions as a whole limited the prejudicial effect of trying multiple charges together.  The trial judge carefully listed the elements of each crime and instructed the jury that the government must prove each element beyond a reasonable doubt.  (Tr. at 1677-84).  The judge then went through each date on which the petitioner was accused of committing a crime and listed the counts corresponding to that date.  (Tr. at 1684-98).  In addition, the court provided the jurors with a verdict sheet that set forth the separate crimes charged against the petitioner and his co-defendant. (Tr. at 1709).  Furthermore, the jury's deliberations support a finding that the jury instructions did not result in actual prejudice.  During deliberation, the jurors requested the playing of audiotapes pertaining to two specific dates, suggesting that they considered the evidence pertaining to each count separately.  (Tr. at 1720-21).

The strength of the evidence also counsels against a finding of prejudice.  The prosecution presented the testimony of the

undercover agent who purchased the firearms as well as the actual firearms and video and audio tapes of several of the transactions. Moreover, the prosecutor methodically walked the undercover agent through each of the dates in question (Tr. at 72-504) and presented the testimony of witnesses who purchased guns for Mr. Pettaway and his co-defendant. (Tr. at 854-96, 931-51, 952-88, 997-1027, 1034-63, 1065-1113, 1116-45, 1146-63, 1163-84, 1187-1205, 1206-20, 1220-53, 1267-91). Therefore, given the strength of the evidence and the prosecution's ordered presentation, it is unlikely that the jury instructions, when viewed in their entirety, resulted in substantial prejudice to the petitioner.

    C. <u>Uncharged Crimes Evidence</u>

    Mr. Pettaway claims that the admission of uncharged crimes evidence violated his right to due process. During the trial, the prosecution presented 13 witnesses who testified that they bought firearms for the petitioner and his co-defendant. (Tr. at 854-96, 931-51, 952-88, 997-1027, 1034-63, 1065-1113, 1116-45, 1146-63, 1163-84, 1187-1205, 1206-20, 1220-53, 1267-91). Several testified that the petitioner gave them drugs in exchange for the firearms or told them to report the guns as stolen. (Tr. at 960-61, 999, 1004, 1045, 1053-56, 1148, 1167, 1212, 1279-80). Mr. Pettaway asserts that the testimony from these witnesses portrayed him as "a dishonest gun and drug dealer." (Pet. App. Brief at 23).

    As with Mr. Pettaway's sufficiency and jury instruction claims,

the Appellate Division found his federal claim relating to uncharged crimes evidence to be unpreserved.  Pettaway, 30 A.D.3d at 258, 817 N.Y.S.2d at 32.  The petitioner has proffered no cause for failing to preserve this claim and thus must show that "failure to consider [it] . . . will result in a fundamental miscarriage of justice."  Coleman, 501 U.S. at 750.  Furthermore, "[t]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence 'is so extremely unfair that its admission violates fundamental conceptions of justice.'"  Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998) (quoting Dowling v. United States, 493 U.S. 342, 352 (1990)).

The trial judge admitted the testimony because it served legitimate evidentiary purposes.  The evidence completed the prosecution's narrative by explaining how the petitioner was able to acquire large quantities of firearms to sell.  The evidence also supported the prosecution's theory that Mr. Pettaway and Mr. Day acted in concert to further a common scheme of obtaining firearms in Virginia and selling them in New York.  Prior crimes evidence is permitted under federal law to serve precisely the purpose it served here.  Fed. R. Evid. 404(b) (prior crimes admissible as proof of plan).  Therefore, the petitioner has not established that the trial court committed any error in admitting the challenged evidence, let alone an error so egregious that it violated fundamental conceptions of justice.

#### D. Ineffective Assistance of Counsel

Mr. Pettaway also contends that he received ineffective representation in violation of his Sixth Amendment rights on the basis of his attorney's failure to object to jury instructions that did not explicitly instruct the jury to consider evidence of each count separately and his failure to allow Mr. Pettaway to testify.

A habeas petitioner's claim that he received ineffective assistance of counsel is analyzed according to the principles set forth in Strickland v. Washington, 466 U.S. 668 (1984). Under this test, a petitioner must demonstrate (1) that the representation he received "fell below an objective standard of reasonableness," id. at 688, and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. When reviewing counsel's performance, a habeas court should be "highly deferential" and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. The habeas court should not "second-guess trial counsel's defense strategy simply because the chosen strategy has failed." United States v. DiTommaso, 817 F.2d 201, 215 (2d Cir. 1987).

Here, even if trial counsel's failure to object to the jury instructions meets the first prong of the Strickland test, the petitioner fails to show a reasonable probability that, with such an objection, the results of the proceeding would have been

17

different.  As discussed above, in view of the jury instructions as a whole, the jury's actions during deliberations, and the strength of the evidence against Mr. Pettaway, it is clear that he was not prejudiced by any mistake in the judge's charge.  Likewise, he was not prejudiced by counsel's failure to object to the charge. Accordingly, there is no need to assess whether counsel's conduct was well-advised.  See Strickland, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.").

Mr. Pettaway also asserts that his attorney was ineffective for not allowing him to testify at trial.  The opportunity to testify on one's own behalf is an established constitutional right.  United States v. Dunnigan, 507 U.S. 87, 96 (1993); Rock v. Arkansas, 483 U.S. 44, 49 (1987) ("[I]t cannot be doubted that a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense.").  This right is considered "personal," and as such may only be waived by the defendant himself.  Brown v. Artuz, 124 F.3d 73, 77-78 (2d Cir. 1997) ("[T]he decision whether to testify belongs to the defendant and may not be made for him by defense counsel.").  Therefore, "'regardless of strategic considerations that his lawyer concludes weigh against such a decision,' a defendant who wishes to testify must be permitted to do so." Chang v. United States, 250 F.3d 79, 82-83 (2d Cir. 2001) (quoting Brown, 124 F.3d at 77).

18

It is the affirmative duty of a defense attorney to fully advise his client of "the nature and existence of the right to testify." <u>Brown</u>, 124 F.3d at 78-79.  Indeed, this obligation "'is a component of the effective assistance of counsel.'"  <u>Chang</u>, 250 F.3d at 83 (quoting <u>Brown</u>, 124 F.3d at 79).  However, as any non-testifying defendant may claim  after the trial that he was denied his right to testify, a defendant bears the burden of proving his claim with detailed allegations.  <u>See</u> <u>id.</u> at 84, 86.

In this case, the basis of Mr. Pettaway's assertion is his statement during the predicate felony hearing that he wanted a new attorney because his counsel had "talked [him] out of taking the stand." (P. at 3).  However, this comment does not demonstrate that his attorney was ineffective.  Instead, it appears to indicate that the petitioner's attorney advised his client of his right to testify and then convinced him that it would not be wise for him to do so -- a course of action that is proper for a defense attorney. Therefore, the performance of Mr. Pettaway's attorney was not deficient.  Furthermore, the petitioner has failed to show prejudice, as he has not set forth what he would have said had he testified and how that would have changed his trial's outcome. Accordingly, I also recommend that this claim be denied.

　　　　　E. <u>Denial of the Right to Counsel</u>

Additionally, Mr. Pettaway argues that the trial court denied him his Sixth Amendment right to counsel by failing to conduct an

inquiry into his request for a new attorney.  While a defendant is guaranteed effective assistance of counsel, "a defendant does not have the unbridled right to reject assigned counsel and demand another" once trial has begun.  United States v. Calabro, 467 F.2d 973, 986 (2d Cir. 1972); accord United States v. Schmidt, 105 F.3d 82, 89 (2d Cir. 1997) (during trial, "a defendant can only substitute new counsel when unusual circumstances are found to exist. . . .").  However, "where a defendant voices a 'seemingly substantial complaint about counsel,' the court should inquire into the reasons for dissatisfaction."  McKee v. Harris, 649 F.2d 927, 933 (2d Cir. 1981) (citing Calabro, 467 F.2d at 986).  In McKee, the Second Circuit promulgated the following rule:

> [W]hen, for the first time, an accused makes known to the court in some way that he has a complaint about his counsel, the court must rule on the matter. If the reasons are made known to the court, the court may rule without more. If no reasons are stated, the court then has a duty to inquire into the basis for the client's objection to counsel and should withhold a ruling until reasons are made known.

649 F.2d at 934 (alteration in original).

At the predicate felony hearing prior to sentencing, the petitioner stated several reasons for his dissatisfaction with his trial counsel.  (P. at 3-5).  Mr. Pettaway informed the trial judge that counsel "never spoke up for me," "talked me out of taking the stand," "wasn't doing anything," and only asked six questions out of "10 reams of questions" that the petitioner provided to him.  (P.

at 3-5).  Because Mr. Pettaway made known to the court the reasons for his dissatisfaction, the trial judge could rule without further inquiry.

There is some question as to whether the predicate felony hearing was the first time Mr. Pettaway expressed dissatisfaction with counsel.  At a hearing prior to trial, the petitioner raised the issue of bail.  In doing so, he stated the issue was "something I wanted to bring up because my lawyer even though he represented [me] hasn't represented me very well."  (H. at 4).[7]  Mr. Pettaway went on to request a reconsideration of bail in light of the postponement of the trial.  (H. at 4).  In the context of this request, it was reasonable for the trial judge not to consider Mr. Pettaway's comment to be a "substantial complaint" that required an inquiry.  In addition, any failure to inquire into the petitioner's dissatisfaction did not deny him the effective assistance of counsel.  Most of the actions complained of, including counsel's decision  to persuade Mr. Pettaway not to testify and his determination not to ask certain questions, implicate counsel's trial strategy and do not indicate "oversight, carelessness, ineptitude, or laziness."  Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009).  Furthermore, the petitioner's claims that counsel never spoke up for him and did not represent him well are contradicted by the record.

---

[7]  "H." refers to the pre-trial proceedings.

21

E. Sentencing

Finally, Mr. Pettaway asserts that the trial court's imposition of consecutive, rather than concurrent, sentences for possession and sale of firearms was cruel and unusual in violation of the Eighth Amendment.  The respondent argues that the petitioner's claim relating to  sentencing is unexhausted because he failed to cast his claim to the state court as an issue implicating federal law and that it is not cognizable on federal habeas review.  He alleges that consecutive sentences were inappropriate because the offenses for which he was convicted "were [] part of a continuous offense and ongoing fraudulent scheme."  (Petition at 5).  Additionally, he claims that the trial court abused its discretion when it failed to consider the undercover officer's conduct as a mitigating factor since the undercover "made him commit numerous acts." (Petition at 5).

1. Exhaustion

A petitioner in a habeas proceeding must exhaust all available state remedies for each claim prior to federal review.  28 U.S.C. § 2254(b)(1)(A), (c); Duckworth v. Seranno, 454 U.S. 1, 3 (1981). For a claim to be exhausted, a petitioner must utilize "all available mechanisms to secure appellate review of the denial of that claim."  Klein v. Harris, 667 F.2d 274, 282 (2d Cir. 1981). If appellate review is not sought, or if the federal claim is not raised before the appellate court, then the claim is unexhausted.

Once appellate review is sought, a federal claim must be "fairly presented to the state courts." Picard v. Connor, 404 U.S. 270, 275-76 (1971); accord Daye v. Attorney General of State of New York, 696 F.2d 186, 191-92 (2d Cir. 1982) (en banc). "In order to have fairly presented his federal claim to the state courts the petitioner must have informed the state court of both the factual and legal premises of the claim he asserts in federal court." Id. at 191. A petitioner need not cite "book and verse on the federal constitution" to alert a state court to the nature of a legal claim; it is sufficient that the legal claims are substantially equivalent. Picard, 404 U.S. at 278 (citation omitted); Daye, 696 F.2d at 192 (citation omitted). However, a state court should not have to guess that a constitutional claim is involved. Petrucelli v. Coombe, 735 F.2d 684, 689 (2d Cir. 1984). A petitioner may fairly apprise the state court that he is raising a federal constitutional claim and of the factual and legal premises underlying the claim by:

> (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on the state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Daye, 696 F.2d at 194.

In his motion to set aside his sentence, Mr. Pettaway claimed that imposition of consecutive rather than concurrent terms of imprisonment made his sentence illegal. (Notice of Motion To Set

Aside Sentence, attached as Exh. 4 to Whetstone Decl., at 1).
Although the petitioner did not cite federal case law, he did claim
that the imposition of consecutive sentences violated the Eighth and
Fourteenth Amendments of the United States Constitution and thus
informed the court of his legal premise.  See Blissett v. Lefevre,
924 F.2d 434, 438 (2d Cir. 1991) (exhaustion satisfied by claim of
deprivation of due process right to fair trial).  In addition, the
unwarranted imposition of consecutive terms of imprisonment is
arguably excessive and brings to mind the Eighth Amendment guarantee
against cruel and unusual punishment.  In any event, even if this
claim is unexhausted, it may be rejected if it is plainly meritless.
§ 2254(b)(2).

     2.  <u>The Merits</u>

    Mr. Pettaway's claim that the court abused its discretion in
deciding to sentence him to consecutive, rather than concurrent,
terms is not cognizable in a habeas corpus proceeding.  See Estelle
v. McGuire, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of
a federal habeas court to reexamine state-court determinations on
state-law questions."); Lewis v. Jeffers, 497 U.S. 764, 780 (1990)
("[F]ederal habeas corpus relief does not lie for errors of state
law."); Evans v. Ercole, No. 07 Civ. 6686, 2010 WL 1506674, at *3
(April 13, 2010) ("The assertion that a sentencing judge abused his
or her discretion in sentencing, including the imposition of
consecutive sentences, is generally not subject to habeas review.");

Romero v. Rock, No. 08 Civ. 7791, 2010 WL 908844, at *19 (S.D.N.Y. Feb. 2, 2010).

In addition, a claim that a sentence is excessive typically may not be raised as a grounds for habeas corpus relief if the sentence is within the range prescribed by state law. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); Evans, 2010 WL 1506674, at *3; Vigil v. Rivera, No. 07 CV 1720, 2008 WL 1902687, at *15 (E.D.N.Y. April 25, 2008). In this case, Mr. Pettaway's sentence, although harsh, was within the statutory limit. For each of his convictions for Criminal Possession of a Weapon in the Third Degree and for Criminal Sale of a Firearm in the Third Degree, both class D felonies, the petitioner was sentenced to no more than seven years, which is the statutory maximum. Penal Law § 70.00(2)(d). And for each of his convictions for Criminal Possession of a Weapon in the Fourth Degree, a class A misdemeanor, he was also sentenced to the statutory maximum of one year. Penal Law § 70.15(1). Furthermore, as a result of Penal Law § 70.30(1)(e)(ii)(A), Mr. Pettaway is deemed to be serving a twenty-year determinate sentence, thus diminishing the severity of his punishment.

However, the mere fact that the sentence falls within the range authorized under state law does not immunize it from scrutiny, for "no penalty is per se constitutional." Solem v. Helm, 463 U.S. 277, 290 (1983); accord Harmelin v. Michigan, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring). A sentence may be so disproportionate

25

to the crime for which the defendant is convicted to be a violation of the Eighth Amendment.  See Solem, 463 U.S. at 290-92; Harmelin, 501 U.S. at 997-98 (Kennedy, J., concurring).  However, a sentence is not constitutionally infirm unless it is a misuse of the "broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes," or is an abuse of the sentencing court's discretion.  See Solem, 463 U.S. at 290.  In Solem, the Court set forth objective criteria by which to measure the proportionality of a criminal sentence; they include the gravity of the offense and the harshness of the penalty, the sentences imposed on other criminals in the same jurisdiction, and the sentences imposed for commission of the same crime in other jurisdictions.  Id. at 290-92.

Here, the sentence was not disproportionate.  Mr. Pettaway was ultimately sentenced to twenty years for selling, along with Mr. Day, a total of 104 guns on several different occasions.  The evidence against Mr. Pettaway was extremely strong -- in fact, his co-defendent testified that they had sold guns to the undercover officer -- and, on appeal, the petitioner only challenged the legal sufficiency of one of his 32 convictions.  See Ercole, 2010 WL 1506674, at *4 (finding sentence not to be grossly disproportionate because, among other things, evidence against petitioner was "overwhelming" and he did not challenge legal sufficiency of the evidence).  Furthermore, Mr. Pettaway "has not presented any

26

argument demonstrating that his sentence is disproportionate based on the same sentence being imposed for other crimes in New York or based on sentences in other jurisdictions for the same crime." Flores v. Rivera, No. 06 Civ. 13517, 2009 WL 1110578, at *20 (S.D.N.Y. April 23, 2009); see also Diaz v. LeFevre, 688 F. Supp. 945, 949-50 (S.D.N.Y. 1988); Carter v. Henderson, 602 F. Supp. 1186, 1188-89 (S.D.N.Y. 1985) (applying analytical framework of Solem).

Mr. Pettaway's assertion that his sentence was unconstitutional because the court failed to consider the undercover's conduct as a mitigating factor is also meritless.  The Supreme Court has held that the individualized sentencing required in the capital context -- which includes the consideration of mitigating factors in determining a sentence -- does not extend to non-capital crimes. Harmelin, 501 U.S. at 995.

The petitioner's claim that his sentence is unconstitutional should therefore be denied.

Conclusion

For the reasons set forth above, I recommend that Mr. Pettaway's petition for a writ of habeas corpus be denied.  Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the

Honorable Laura T. Swain, Room 755, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:    New York, New York
          May 3, 2010

Shawn Pettaway
03-A-4427
Eastern Correctional Facility
P.O. Box 338
Napanoch, New York 12458

Kayonia L. Whetstone, Esq.
Karen Swiger, Esq.
Assistant District Attorney
198 East 161st Street
Bronx, New York 10451

28